UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSEPH C.,

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:22-cv-00465-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on April 20, 2022, denied Plaintiff's applications for disability insurance benefits and supplemental security income. Plaintiff has now moved for judgment on the pleadings (Doc. 7), and the Commissioner has filed a similar motion (Doc. 8). For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** the Commissioner's motion, and direct the entry of judgment in favor of the Commissioner.

### I. BACKGROUND

    Plaintiff filed his applications for benefits on December 3, 2019, alleging that he became disabled on June 1, 2013, which date was later amended to July 3, 2018. After initial administrative denials of that claim, a hearing was held before an Administrative Law Judge on July 6, 2021. Both Plaintiff and a vocational expert, Melissa J. Fass-Karlin, testified at the hearing.

    The Administrative Law Judge issued an unfavorable decision on September 30, 2021. He first found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2018, and that he had not engaged in substantial gainful activity since his amended alleged onset date. Next, he concluded that Plaintiff suffered from severe impairments including left knee tear of the posterior horn of the medial meniscus, bulging disc at L4-5 and L5-S1, cervical spine multi-level disc herniation and bulging discs, bilateral carpal tunnel syndrome status post-release, status-post ulnar nerve decompression, bipolar disorder, and posttraumatic stress disorder. However, the ALJ determined that these impairments, taken singly or in combination, did not meet the criteria for disability under the Listing of Impairments.

    Moving forward with the sequential evaluation process, the ALJ then concluded that Plaintiff had the ability to perform a reduced range of light work. He could frequently climb

stairs, ramps, ladders, ropes, and scaffolds, could occasionally stoop and crouch, needed to avoid working at unprotected heights and with dangerous machinery, could frequently handle, finger, and reach bilaterally, could understand, remember, and carry out simple work instructions, could adapt to routine changes in the work setting, and could occasionally interact with supervisors, coworkers, and the general public.

The ALJ further concluded that Plaintiff had no past relevant work but, relying on the vocational expert's testimony, the ALJ determined that, given his vocational profile and with the limitations described above, Plaintiff could perform certain light jobs such as mail clerk, routing clerk, and cleaner. He also found that these jobs existed in significant numbers in the national economy. As a result, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff, in his motion for judgment on the pleadings, raises two issues, stated *verbatim* as follows:

> 1. Did the ALJ fail to reconcile limitations found "persuasive", resulting in an RFC not supported by substantial evidence?
>
> 2. Did the ALJ fail to apply the proper standards for evaluating Plaintiff's well supported subjective complaints?

Plaintiff's Memorandum, Doc. 7-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 41 years old at the time of the administrative hearing, first testified that he completed high school and that in the prior 15 years he had worked mostly at temporary jobs but also that he was shot and at a party and that the aftermath of that event affected his ability to concentrate on work. He also had physical complications from the shooting. Plaintiff said he had gone to group counseling sessions but never actually saw a therapist or psychiatrist. He attempted suicide in 2019 and was hospitalized for ten days.

Plaintiff also said that he had two recent surgeries, one on each arm, involving the left and right elbows and wrists. He was having some trouble using his hands for small tasks. Plaintiff also declined surgery for his knee, back, and neck, and he was getting chiropractic treatment for his neck. His elbows also had not healed to the point that he could reach overhead. His back issues stemmed from a car accident and he continued to have soreness there. It also became painful if he sat in a hard chair without armrests for more than ten or fifteen minutes. He could walk a block and a half and had to rest after climbing a full flight of stairs. Plaintiff also wore a back brace and used a TENS unit. Lastly, he said that his mind would wander while he was performing work tasks and reading had become difficult for him. He did not like being in

crowds or out in public.

The vocational expert, Ms. Fass-Karlin, was asked questions about a person with Plaintiff's vocational profile who was limited to light work with various postural limitations and who also could do simple work with occasional interactions with others. She said that such a person could be employed as a mail clerk, routing clerk, or cleaner (housekeeping), and she gave numbers for those jobs as they existed in the national economy. If, however, the person would be absent from work two or three days per week, he or she could not be employed, and the same would be true if the person were off task more than ten percent of the time. If the person were limited to sedentary work, there would also be positions available, but only a few jobs would be available for someone who could only handle, finger, and manipulate objects occasionally, as opposed to frequently.

### B. Treatment Records

The pertinent medical treatment records show the following. After being involved in a vehicle accident in October, 2019, Plaintiff had a knee MRI done in December which showed tears in the posterior horn of the medial meniscus. An MRI done the next month of his lower back showed bulging discs at L5-S1and L4-5, and one done on his neck showed herniations at C3-4 through C6-7.

On November 11, 2019, Plaintiff underwent an initial psychiatric evaluation after a close attempt to jump off a building. He did have a history of drug and alcohol abuse as well as a history of ADHD. Plaintiff explained that when he was 29 he was a party where a number of people, including himself, were shot, and that several of them died, leaving him with frequent nightmares and intrusive memories. On examination, his mood was euthymic although he said he was depressed. His thought processes were scattered and tangential and he reported frequent suicidal ideation. The diagnoses at that time included bipolar disorder with psychosis, PTSD, and substance abuse disorders involving cocaine and alcohol. His GAF was rated at 50 and continued counseling and therapy were recommended. Progress notes showed that his condition improved with treatment and by mid-2020 he was describing his symptoms as mild. In early 2021 he said he was taking his medication as directed and had no concerns, although he continued to abuse substances occasionally even as late as July of that year. Other notes indicate, however, that he was not particularly medication-compliant and that he was having sleep issues and mood disturbances.

During the early months of 2020, and actually going back to 2019, Plaintiff continued to report pain in his back, neck, and left knee. He received some chiropractic care before in-person examinations were limited due to COVID-19, and resumed that care later, being described in a note from early 2021 as being totally temporarily disabled. He was also being treated for carpal tunnel syndrome and elbow pain by injections, followed by surgery on both wrists in May and June of 2021.

### C. Opinion Evidence

Dr. Fabiano, a psychologist, performed a consultative psychiatric evaluation on March 15, 2020. Plaintiff said he had been receiving mental health treatment for five or six months and that he was hospitalized in September of 2019 following a suicide attempt. At that time, he denied any suicidal ideation or depressive symptoms. He did report anxiety since the shooting as well as mild auditory hallucinations. He was attending AA meetings and used substances only occasionally. The mental status exam was essentially unremarkable except for some impaired memory skills related to distractibility. Dr. Fabiano thought Plaintiff had mild limitations in the area of dealing with simple instructions and had moderate limitations in dealing with complex instructions, interacting with others, and regulating and controlling his behavior. These issues did not interfere with his ability to function on a daily basis, however. (Tr. 374-79).

The same day, Dr. Jenouri performed a consultative internal medicine evaluation. Plaintiff reported a history of neck and back pain as well as hypertension. He said he could cook, clean, do laundry, and go shopping on an occasional basis. On examination, he had some limitations in the range of motion of the cervical and lumbar spine and he had some knee pain. His hand and finger dexterity was intact. Dr. Jenouri thought that Plaintiff had mild to moderate restrictions in his ability to walk and stand for long periods and in bending, stair climbing, lifting, and carrying. (Tr. 381-84).

Plaintiff's treating chiropractor completed a form on July 15, 2021, indicating that Plaintiff's pain would constantly interfere with his attention and concentration and that he was incapable of performing even low stress jobs. He also could not sit or stand, needed unscheduled breaks, could not lift even ten pounds, could perform no postural activities, and would miss more than four days of work per months. (Tr. 890-94).

There are state agency evaluations as well. On April 24, 2020, Dr. Baronos concluded that Plaintiff could do light work but could only frequently climb stairs, ramps, ladders, ropes and scaffolds and could only occasionally stoop and crouch. He had no manipulative limitations and had to avoid concentrated exposure to hazards. Dr. Wang agreed with this assessment. From a mental standpoint, Dr. May stated that Plaintiff had social interaction limitations with respect to supervisors and coworkers and was moderately limited in his ability to set realistic goals or make independent plans. Dr. Henessey, the next reviewer, did not think Plaintiff had a severe mental impairment at all.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108,

112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV.  DISCUSSION

### A.  Reconciling Limitations

In his first claim of error, Plaintiff argues that the ALJ, although he found the opinions of the consultative examiners to be persuasive, then failed to reconcile their opinions with his residual functional capacity finding.  More specifically, he asserts that there is a conflict between Dr. Fabiano's conclusion that Plaintiff was mildly limited in his ability to follow simple instructions and the ALJ's determination that he could do so without limitation, and also a conflict between Dr. Fabiano's statement that Plaintiff was moderately limited in his ability to control his emotions and behavior and regulate his well-being and the ALJ's failure to include any such limitations in his residual functional capacity finding.  Plaintiff points out additional discrepancies between Dr. Jenouri's report and the ALJ's decision, including the fact that Dr. Jenouri believed Plaintiff was mild to moderately limited in his ability to walk and stand for prolonged periods but the ALJ determined that Plaintiff could meet the walking and standing requirements of light work.  In response, the Commissioner argues that by limiting Plaintiff to simple work with only routine changes and occasional interaction with others, the ALJ fully accounted for the limitations suggested by Dr. Fabiano, and that mild to moderate limitations in physical functioning are consistent with the ability to perform light work.

It is true, as Plaintiff argues, that the ALJ found Dr. Fabiano's opinion to be "persuasive," Tr. 25, and Dr. Jenouri's opinion to be "generally persuasive," Tr. 26.  However, he also found the opinions of the two state agency physical capacity reviewers to be persuasive, as well as the opinion of state agency psychologist Dr. May.  (Tr. 26-27).  His residual functional capacity finding tracks the opinions of those reviewers, and Plaintiff does not point out any inconsistencies between their findings and the ALJ's.  Plaintiff's argument appears to be based

on the concept that when there is a seeming discrepancy between two different medical opinions which an ALJ finds to be persuasive, it is error for the ALJ not to acknowledge that discrepancy and explain how it was resolved - or, conversely, error for the ALJ not to adopt the findings of the medical source who appears to express an opinion more favorable to the claimant. That argument clearly depends on whether there is an actual conflict present, which, according to the Commissioner, does not exist on this record.

Plaintiff places strong reliance on this Court's decision in *Jimmie E. v. Comm'r of Soc. Sec.,* 2021 WL 2493337 (W.D.N.Y. June 18, 2021). There, a treating source opinion which the ALJ found to be persuasive included "moderate to marked limitation in using reason and judgment to make work-related decisions, moderate to marked limitation in sustaining concentration and performing a task at a consistent pace, and moderate limitation in regulating emotion, controlling behavior and maintaining well-being." *Jimmie E.*, *supra*, at *5. None of those limitations were incorporated into the residual functional capacity finding, however, and the Court noted that such limitations "could be work preclusive." *Id*.

That is clearly not the case here. Dr. Fabiano explicitly said that the limitations he imposed were not severe enough to interfere with normal functioning. The state agency opinion which the ALJ found to be persuasive explicitly cited Dr. Fabiano's report and determined that Plaintiff would be "capable of tasks in a low contact environment," Tr. 71, which is what the ALJ then concluded. Further, as the Commissioner notes, a limitation to simple tasks in a routine work environment is generally viewed as consistent with mild or moderate mental limitations. *See, e.g., Johnson v. Berryhill*, No. 1:17-CV-00684-MAT, 2018 WL 4539622, at *6 (W.D.N.Y. Sept. 21, 2018) (noting that "the ALJ included significant mental limitations in the RFC finding, including limiting Plaintiff to simple, routine tasks - a limitation which accounts for Dr. Baskin's findings regarding Plaintiff's difficulties in maintaining attention and concentration, performing complex tasks, and learning new tasks"). Additionally, there is nothing to suggest, as Plaintiff argues, that the limitations found in Dr. Fabiano's report translated to a finding that Plaintiff would be off task more than 10% of the time. The Court therefore finds no error in the way in which the ALJ accounted for Plaintiff's mental limitations.

As to the physical limitations described in Dr. Jenouri's report, it is significant that the ALJ found that opinion to be "generally persuasive," suggesting that there were portions of it which he discounted in favor of the conclusions reached by the two state agency reviewers. Further, many court decisions addressing this issue have found no inconsistency between moderate limitations in prolonged standing and walking and the ability to do light work. *See, e.g., Martinez v. Comm'r of Soc. Sec.,* 2016 WL 6885181, at *13 (S.D.N.Y. Oct. 5, 2016), *report and recommendation adopted,* 2016 WL 6884905 (S.D.N.Y. Nov. 21, 2016) (" Dr. Lathan concluded that Plaintiff had a stable prognosis, but moderate restrictions for lifting, pushing, pulling, overhead reaching, stooping, squatting, prolonged standing, and prolonged walking. ®. 307). These moderate restrictions are consistent with an RFC for light work"); *cf. Byron B. v. Comm'r of Soc. Sec.*, 2021 WL 4803632, *6 (W.D.N.Y. Oct. 14, 2021); *Lewis v. Colvin*, 548 F. App'x 675, 677 (2d Cir. 2013) ("the ALJ's determination that Lewis could perform 'light work' is supported by Dr. Datta's assessment of 'mild limitations for prolonged sitting, standing, and

walking"'). Further, the vocational expert testified that there would be sedentary jobs which Plaintiff could perform were he unable to fulfill the exertional requirements of light work, so any error in this regard would appear to be harmless. For all of these reasons, the Court finds no merit in Plaintiff's first claim of error.

### B. Evaluation of Plaintiff's Subjective Report of Symptoms

In his second claim of error, Plaintiff contends that the ALJ applied an improper standard when evaluating Plaintiff's subjective testimony because he determined that Plaintiff's activities of daily living were not consistent with a finding of total disability, which, according to Plaintiff, is not the proper legal standard to be used in this context. In response, the Commissioner notes that an ALJ has substantial discretion to accept or discount a claimant's subjective description of symptoms and may consider all of the evidence of record in doing so. Here, according to the Commissioner, the ALJ took into account not only Plaintiff's testimony but also the opinions of the medical sources who concluded that he was capable of a limited range of light work and his activities of daily living, factors which are permissible when evaluating such testimony. Those activities included cooking, doing household chores, using public transportation, shopping, taking a college course, and caring for children.

Plaintiff is correct that being able to engage in a range of daily activities is not the equivalent of being able to be employed on a sustained basis, and that if an ALJ relies solely on such activities in making such a finding, that may be error. However, that is not what happened here. First, the ALJ laid out the correct legal standard to be used in evaluating a claimant's subjective report of symptoms. *See* Tr. 25. Second, the ALJ cited multiple factors contributing to his evaluation, including "generally normal examination findings," Tr. 24, and the fact that, from a mental standpoint, Plaintiff had "few symptoms and typically minimal examination findings," *id*. The ALJ's recitation of Plaintiff's activities of daily living and his comment that these activities were generally inconsistent with a finding of total disability, Tr. 24-25, was by no means the totality of his discussion about the consistency of Plaintiff's testimony with the evidence of record, and does not demonstrate that he applied an incorrect legal standard. As this Court observed in *Christina J. v. Comm'r of Soc. Sec.*, 695 F. Supp. 3d 357, 364 (W.D.N.Y. 2023), "[w]hile it is true that the capability to perform activities of daily living is not inherently inconsistent with a finding of disability, '[t]he law is clear that the ALJ may consider ... [a claimant's] purported activities of daily living for the purposes of a credibility determination,'" *quoting Cahill v. Astrue*, 2012 WL 3777072, at *5 (D. Vt. Aug. 29, 2012). Because that is what happened here, Plaintiff's second argument provides no basis for ordering a remand.

### V. CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 7), **GRANTS** the Commissioner's motion (Doc. 8), and **DIRECTS** the Clerk to enter judgment in favor of the Commissioner.

                                                          /s/ Terence P. Kemp
                                                          **United States Magistrate Judge**